## TELLURIDE POWER CO. v. GATES, County Assessor.

No. 3881.   Decided December 27, 1922.   Rehearing denied March 3, 1923.   (213 Pac. 175.)

1.  TAXATION—PROPERTY OWNED BY ELECTRIC COMPANY, AND OPER-ATED ENTIRELY WITHIN COUNTY, MAY BE ASSESSED BY COUNTY ASSESSOR.   Under Comp. Laws 1917, § 5873, as amended by Laws 1919, c. 114, providing that property and franchises owned by electric light, railroad, etc., companies operated in more than one county of the state must be assessed by the State Board of Equalization, an electric light plant operated entirely in one county, but owned by a company which operated over several counties, was assessable in the county in which it was located, since to be assessable by the State Board the property must be both owned and operated in more than one county; the fact that the profits of all the plants located in different counties went into one treasury, and the losses, if any, were paid out of one treasury, not being sufficient to authorize assessment by the State Board of Equalization.

2. TAXATION—RIGHT TO ASSESS PROPERTY IS VESTED IN LOCAL AU-
THORITIES UNLESS OTHERWISE PROVIDED. Unless otherwise pro-
vided by some statutory or constitutional provision, the right
to assess property is vested in the local authorities, and is to
be exercised by them unless taken away by express provision
or by unavoidable implication.

Original proceedings by the Telluride Power Company for
a writ of prohibition to be directed to Charles H. Gates, as
County Assessor of Garfield County.

Writ denied.

*H. R. Waldo,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty.
Gen., for defendant.

FRICK, J.

The plaintiff, a corporation, filed its application in this
court praying for a writ of prohibition against the defend-
ant as county assessor of Garfield county, to prohibit him,
for the reasons hereinafter stated, from assessing for taxa-
tion certain property owned by the plaintiff in said county.
An alternative writ was duly issued requiring the defendant
to show cause by a day named why a permanent writ should
not be issued, as prayed by plaintiff. The defendant duly
appeared in this court by the Attorney General of this state,
and filed a general demurrer to the complaint. The case
was duly argued and submitted upon the demurrer by both
parties.

The conceded facts, in substance, are that the plaintiff is
a public service corporation which owns and operates certain
power plants, transmission and distributing lines including
the necessary equipment for the purpose of generating, trans-
mitting, and distributing electricity to its patrons which is
used for power, lighting, and other purposes; that plaintiff
owns and operates such plants, transmission and distributing

lines in Sanpete, Sevier, Piute, Beaver, and Millard counties;
that the power plants, transmission and distributing lines in
the foregoing counties are all physically connected, and to
all intents and purposes are operated as a unit; that plain-
tiff also owns a power plant, transmission and distributing
lines in Garfield county, the latter plant and lines, however,
having' no physical connection with the power plants, trans-
mission and distributing lines owned and operated in the
other counties referred to, said Garfield county plant being
physically disconnected and independent of all other plants
and transmission lines; that the Garfield county plant is,
however, owned and operated by the plaintiff, and for the
purposes of financing, rate-making, etc., is considered by
plaintiff as a part of its other plants.

In view of the facts just stated, plaintiff contends that the
Garfield property for the purpose of assessment for taxation
is controlled by the provisions of Comp. Laws Utah 1917,
§ 5873, as amended by chapter 114, Laws Utah 1919, which,
so far as material here, reads as follows:

"All property and franchises owned by railroad, street railroads,
car, telegraph, telephone, electric light, pipe line, power, canal, irri-
gating and express companies operated in more than one county in
in this state, * * * must be assessed by the State Board of
Equalization as hereinafter provided. Other franchises shall be as-
sessed in the county or city where the franchise is exercised."

It will be observed that the language of that section is to
the effect that all the property mentioned in the first three
lines of the section must be both "owned" and "operated"
by the several owners described, in the section in order to
make the provisions thereof applicable. The statute, omit-
ting the names of the owners and the character of the
property, provides that all property "owned" by the
several owners named which is "operated" in more than
one county must be assessed by the State Board of
Equalization, and that "other franchises shall be assessed
in the county or city where the franchise is exercised."
The meaning and purpose of the language, to
our minds, is clear. It means that, if the property
enumerated in the section, by whomsoever owned, is

not operated in more than one county, then the power to assess is not conferred upon the State Board of Equalization, but is vested in the local authorities. In other words, there must not only be a unity of ownership and of use (the latter term being here used in its broadest sense), but there must be a unity of operation.

If plaintiff's construction of the statute is adopted, then a public service corporation could own and operate plants, transmission and distributing lines in ten or a dozen different counties in this state, none of which property had any physical connection, yet, because all of the plants were operated for the benefit of one owner the State Board of Equalization would have exclusive jurisdiction for assessment purposes. If that had been the intention of the Legislature it undoubtedly would have omitted the word "operated" and would have confined itself to the word "owned." Both words were used as limitations, however, and therefore both must be considered and given effect together; and, if that be done, the meaning, to our minds, is clear.

There is, however, another reason why the language used in the foregoing section must be given the meaning here contended for: Unless otherwise provided by some statutory or constitutional provision the right to assess property is vested in the local authorities, and, being thus vested in them, the right must be exercised by them. Now there is nothing in section 5873, nor in our Constitution, that deprives the local authorities of that right or duty except where certain property is owned and used for certain purposes, which property is operated in more than one county. In that event the State Board of Equalization must assess such property. Under our system of government the authority to assess property for taxation is necessarily vested in the local authorities, and the right must be exercised by them, unless they are deprived of that right, as before stated. This is so for many reasons which it is not necessary to enumerate here. That being the case, the right is not to be frittered away by any loose or latitudinarian construction. Unless, therefore, the right is taken from the local authorities by some          2

express provision or by unavoidable implication, it must remain where it naturally is lodged. Undoubtedly there is much property in this state which is owned by .a single owner or corporation but which is used in different counties as a unit; that is, the property is physically connected, and, although used in several counties, is nevertheless used and operated as a single plant. With regard to such property there is not only a unity of ownership and a unity of use, in a broad sense, but there is also a unity of operation. It is not enough, in order to authorize the State Board of Equalization to assess the property enumerated in the first three lines of section 5873, that the profits arising from the use and operation thereof, although located in different counties, go into one pocket or treasury, and that the losses, if any, come out of that pocket or treasury, but, in order to be assessed by that board, the property must be owned and operated as a unit in more than one county. Undoubtedly the Legislature assumed, as it had a right to do, that, where property is located in more than one county, and is operated as a unit, it might be difficult for the local assessor to make a just and fair valuation for taxation of that portion of the property so used which is within his county, and that the State Board of Equalization, being wholly disinterested, and by virtue of the experience of the members thereof, would be better qualified to place a correct valuation on such property. Where, however, property is located wholly within one county, and is used and operated independently, and is physically disconnected from other property, although owned by the same owner, there is absolutely no more reason to permit the State Board of Equalization to assess such property than there would be to permit it to assess any other property which is owned and used in only one county.

We are forced to the conclusion, therefore, that by what is said in section 5873 it was not intended to confer, nor does that section confer, authority upon the State Board of Equalization to assess the property in question for taxation.

By anything that we have herein said or omitted we do not wish to be understood nor do we intimate that the Legis-

lature may not confer authority upon the State Board of Equalization to assess any property unless the same is located and operated in two or more counties. All that we here decide is that the Legislature has not conferred that authority upon said Board with respect to the property herein referred to and enumerated in the first three lines of section 5873, supra.

From what has been said it follows that the writ prayed for should be, and it accordingly is, denied. Defendant to recover his costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.